FILED by ☒ D.C.

AUG 2 4 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA – MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

## Case Number:  12-22552-Civ-MORENO

COUNTRYWIDE HOME LOANS SERVICING,
L.P.

       Plaintiff,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, Et Al.,

       Defendants.

_____/

## DEFENDANT JACK KACHKAR'S RESPONSE
## AND INCORPORATED MEMORANDUM OF LAW
## IN OPPOSITION
## TO PLAINTIFF'S CORRECTED MOTION TO REMAND

Defendant and Counterclaim Plaintiff JACK KACHKAR ("Defendant Kachkar"),

appearing on a pro se basis in the above captioned action (the "Action"), hereby

respectfully submits this Response and Incorporated Memorandum of Law in Opposition

to Plaintiff's Corrected Motion to Remand [Docket Entry No. 15].[1]

## INTRODUCTION

In its Corrected Motion to Remand (Plaintiff's "MTR"), the Plaintiff has raised

just two (2) purported defects in Defendant Kachkar's Notice of Removal [Docket Entry

No. 1]. These are that Defendant Kachkar's Notice of Removal was untimely and,

---

[1]    The Plaintiff served and filed its Corrected Motion to Remand on August 10, 2012 and informed Defendant Kachkar that day that Plaintiff's original Motion to Remand, served on filed on August 9, 2012, had formatting errors and, therefore, should be deemed moot. As a result, Defendant Kachkar is properly and timely responding to Plaintiff's Corrected Motion to Remand, pursuant to the Federal Rules of Civil Procedure and this Honorable Court's Local Practice Rules.

secondly, that such Notice of Removal lacks unanimity or the consent of all the defendants. The Plaintiff is also seeking attorneys' fees and costs in its MTR.

As a result and as evidenced by Plaintiff's MTR, the Plaintiff has not found any other defects in Defendant Kachkar's Notice of Removal, and therefore the Plaintiff has waived any other potential defect arguments, other than any subject matter jurisdiction arguments it may purportedly have, especially as its 30 days to cite such defects has now expired.

First, in response to Plaintiff's primary argument that Defendant Kachkar's Notice of Removal was untimely, Defendant Kachkar refers the Honorable Court to his original Notice of Removal and also to Section 5 of his August 10, 2012, Removal Status Report [Docket No. 19], in which Defendant Kachkar cites that, pursuant to 28 U.S.C. §1446 (b)(3), he timely removed this Action within thirty (30) days of his receipt of a pleading/submission voluntarily filed/submitted by the Plaintiff (i.e. the "Parsons Affidavit")[2] which made this Action removable.[3] As a result, Plaintiff's first argument that the Notice of Removal is untimely fails.

Secondly, based on one of the exceptions to the unanimity requirement effecting removal, Defendant Kachkar did not need the consent of nominal or formal defendants to remove this Action. Defendant Kachkar's spouse, Viktoria Benkovitch ("Defendant

---

[2]     Please see the June 20, 2012 Affidavit of John Parsons, Vice President of Bank of America, N.A. ("BANA"), which is contained in the State Court records located in the Exhibits to the Notice of Removal, cited in Defendant Kachkar's Removal Status Report [Docket No. 19], and is also attached herewith at Exhibit A (the "Parsons Affidavit"). Defendant Kachkar has submitted his Notice of Removal based on such Parsons Affidavit, a voluntary pleading by the Plaintiff that was served on Defendant Kachkar within thirty (30) days of his Notice of Removal.

[3]     This Action was not removed pursuant to 28 U.S.C. § 1332 ("Diversity of Citizenship") and therefore the one-year limitation on removal is not applicable.

Benkovitch"), did consent to the Notice of Removal.[4] Therefore, Plaintiff's second defect argument also fails. In fact, although Defendant Kachkar has cited that the Parsons Affidavit confirmed that the other defendants in this Action are nominal and/or formal defendants, thereby making this Action removable to this Honorable Court, the Plaintiff, in its own MTR, again confirmed, as an example, that the Federal Deposit Insurance Corporation, as Receiver for Westernbank Puerto Rico (the "FDIC-R") is a nominal/formal defendant. Please *see* Plaintiff's MTR at Docket No. 15, page 1; last sentence (i.e. the Plaintiff asserts that the FDIC-R is a "nominal" inferior lien holder).

The Plaintiff should also not be awarded the attorneys' fees and/or costs it seeks in its MTR. In light of the extra-ordinary circumstances highlighted in Defendant Kachkar's Notice of Removal, including his arguments with respect to Federal jurisdiction preemption, the matters set forth in his Removal Status Report, including the noted receipt of the Parsons Affidavit within thirty (30) days of his Notice of Removal, and the overlapping litigation in the Federal District Court for the District of Puerto Rico, Defendant Kachkar has presented a good faith basis for removal, and therefore any award of fees and/or costs sought by the Plaintiff is unwarranted and prejudicial to Defendant Kachkar.

## ARGUMENT

### I.     Federal Law Completely Preempts Plaintiff's State Law Action

Even when a plaintiff has pled only state-law causes of action, the plaintiff may not avoid federal jurisdiction if either: (1) the plaintiff's state-law claims raise substantial questions of federal law or (2) federal law completely preempts the plaintiff's state law

---

[4]     Please see Docket No. 9 and Docket No. 18 which evidence Viktoria Benkovitch's consent to the Notice of Removal.

claims. *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285 (11th Cir. 2004)(citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). Preemption is the power of federal law to displace state law substantively.

Please also see *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed 2d 206 (1985) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 6 L.Ed 23 (1824) (explaining that a state law that is contrary to or interferes with a federal law must yield to the federal law)). In this Action, Federal Law preemption derives from the Supremacy Clause of Article VI of the Federal Constitution:

> "This Constitution, and the Laws of the Unites States which be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.

Such preemption transforms the state claim into one arising under federal law, thus creating the federal question jurisdiction required to removal to federal courts. See *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L.Ed. 2d 55 (1987).

The Asset Freeze Order, in relation to the subject property in this Action and other Defendant Kachkar (and his spouse's) assets, issued by the Federal District Court for the District Court of Puerto Rico completely preempts the Circuit Court's jurisdiction over the subject property and this Action. Accordingly, where the congressional intent to preempt is so powerful, as in this instance, Article VI, Clause 2 of the U.S. Constitution over-rides the Plaintiff's State court pleadings, and provides this Honorable Court jurisdiction pursuant to 28 U.S.C. §1331 which provides that "[t]he district courts shall

have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

## II.     The Notice of Removal was Timely

This Action was not removed based on a diversity of citizenship (i.e. 28 U.S.C. §1332). As a result, and pursuant to 28 U.S.C. 1446(b)(3), [i]f the case stated by the initial pleading is not removable, a notice of removal may filed within thirty [30] days after receipt by the defendant, through service or otherwise, a copy of an amended pleading, motion, order or other paper [as a result of a voluntary act by the plaintiff] from which it may first be ascertained that the case is one which is or has become removable…..".

On June 20, 2012 and again on June 25, 2012, Defendant Kachkar was served the Parsons Affidavit by the Plaintiff, asserting that the damages the Plaintiff was seeking in its Complaint amounted to $7,646,509.66 (the "Grand Total"), and that Defendant Kachkar had purportedly defaulted on a loan made to him by the Plaintiff. No other defendant was cited and/or named in the Parsons Affidavit. The Parsons Affidavit also asserts that Defendant Kachkar was sent a notice of such default and that Defendant Kachkar is solely responsible for all the amounts due under default. Please *see* Exhibit A for copies of such Parsons Affidavit. The Parsons Affidavit does not assert that any other defendant in this Action, other than Defendant Kachkar, was sent such default notice; that any other defendant was in default; or that any other defendant is solely or jointly responsible for any amounts identified by the Grand Total in the Parsons Affdavit. The Parsons Affidavit also fails to cite and/or describe any claims against Defendant Benkovitch, the FDIC-R or any other previously named defendant in this Action.

Further, although Mr. Parsons states that he has reviewed and attached the business records of BANA (the "BANA Records") in relation to Plaintiff's Complaint, the Parsons Affidavit and/or the BANA Records (i) do not cite or describe any type of mortgage and/or claim held or asserted by the FDIC-R; (ii) fail to cite or disclose the Federal Court Asset Freeze Order issued by the Federal District Court for the District of Puerto Rico in relation to the Property or (iii) how BANA came to hold a purported Loan and Mortgage with respect to Defendant Kachkar and no other named defendants.

Under the second paragraph of §1446(b), a case becomes removable within thirty days, when three conditions are present: there must be (1) "an amended pleading, motion, order or other paper," which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can "first ascertain" that federal jurisdiction exists. The Parsons Affidavit, received within thirty days of the Notice of Removal, confirmed to Defendant Kachkar that the other defendants are nominal and/or formal defendants and as a result, the Action became removable as the other defendants consent was no longer required to remove the Action to this Honorable Court. Moreover, the Parsons Affidavit, filed in support of a summary judgment motion, unambiguously confirmed to Defendant Kachkar that the Plaintiff intended to foreclose on an asset (the "Property") owned by Kachkar but which is under the jurisdiction of a federal court order. Again, please *see* U.S. Const. Art. VI, cl. 2.

### III.    There are Exceptions to the Unanimity Rule

As the Honorable Court is aware, there are three (3) exceptions to the unanimity requirement effecting removal; namely: "(1) the non-consenting defendants had not been served with process at the time the notice of removal was filed; (2) the unconsenting

6

defendants are nominal or formal defendants; or (3) removal is pursuant to §1441(c)." Please *see* <u>Bradwell v. Silk Greenhouse, Inc.,</u> 828 F. Supp. 940, 943 n.2 (M.D. Fla. 1993), for example.

Based on the Plaintiff's own Complaint and pleadings, the other named Defendants in the Plaintiff's Complaint are nominal or formal defendants and, therefore, pursuant to one of the exceptions to the unanimity requirement, their consent is not required. Further, other than the Kachkars, the FDIC-R and Defendant Brennan, all other named defendants have already defaulted pursuant to the Plaintiff's request to the State Court for such default(s).

The Parsons Affidavit, which was served upon Defendant Kachkar within thirty (30) days prior to his Notice of Removal states that Defendant Kachkar purportedly owes a certain amount of money to the Plaintiff. No other defendant was identified or cited in such Affidavit, including Defendant Kachkar's spouse, Defendant Benkovitch. In fact, the Parsons Affidavit asserts that Defendant Kachkar solely owes money to the Plaintiff. Based on such pleading, it is abundantly clear that the Plaintiff has taken the position that all the other defendants in this Action have solely been named for formal purposes, therefore, effectively now permitting this Action to be removed pursuant to Defendant Kachkar's Notice of Removal.

Moreover, as highlighted above, the Plaintiff in its MTD, even states that the FDIC-R, for example, was named as a defendant due to a *nominal* inferior lien. This further reinforces Defendant Kachkar's argument that the other defendants are nominal defendants in Plaintiff's Complaint, and as a result, their consent is not required for removal due to the unanimity exception identified earlier. Please also see <u>Willingham v.</u>

Morgan, 395 U.S. 402, 407 n.3, 89 S.Ct. 1813, 1816, 23 L.ED.2d 396 (1969). A defendant may also effectively amend a defective notice of removal upon receipt of additional evidence that supplements the earlier-filed notice, including by way of receipt of a paper from the plaintiff that would itself provide sufficient grounds for removal.

Alternatively, if the FDIC-R is found to be an indispensable party based on the pending litigation between the FDIC-R and Defendant Kachkar in relation to the Property and other properties owned by the Kachkars, then the United States District Court would still have subject jurisdiction based on such overlapping/concurrent federal actions and the Asset Freeze Order pending in the United States District Court of Puerto Rico in relation to the Property.[5] Please again *see* Kachkar et al v. Federal Deposit Insurance Corporation as Receiver for Westernbank Puerto Rico, Case No. 08-cv-02427-ADC (D.P.R., December 31, 2008) and please also *see* Federal Deposit Insurance Corporation as Receiver for Westernbank Puerto Rico v. Kachkar et al, Docket Nos. 197, 577, 775, 778 and 779 in Case Number 07-01606-ADC (D.P.R., July 4, 2007).

**IV.     Fees and Costs Should Not Be Awarded**

The Plaintiff should also not be awarded the attorneys' fees and/or costs it seeks in its MTR. In light of the extra-ordinary circumstances highlighted in Defendant Kachkar's Notice of Removal, including his arguments with respect to Federal jurisdiction preemption, the matters set forth in his Removal Status Report, including the noted receipt of the Parsons Affidavit within thirty (30) days of his Notice of Removal, and the overlapping litigation in the Federal District Court for the District of Puerto Rico

---

[5]     Defendant Kachkar intends to file a Motion to Transfer and Consolidate this Action with the current over-lapping actions pending in the United States District Court for the District of Puerto Rico. Pursuant to 28 U.S.C. §1446(a), as this Court is the United States District Court for the district and division within which the State Court action is pending, Defendant Kachkar has first properly removed this Action to this Court.

in which a United States federal agency (i.e. the FDIC) is involved, Defendant Kachkar has presented a good faith basis for removal, and therefore any award of fees and/or costs sought by the Plaintiff is unwarranted and prejudicial to Defendant Kachkar. Please also *see* Wright, Miller & Cooper, §3739 at 488 ("costs and fees will be denied by the district court when there are reasons to believe that the removability of the case was plausible").

## CONCLUSION

As highlighted above, the Plaintiff has cited only two (2) defect arguments in its MTR. Both such arguments have been addressed herein. As its thirty (30) days to cite any such defect has now expired, the Plaintiff has waived any other potential defect arguments, other than any subject matter jurisdiction arguments it may purportedly have.

The Plaintiff also attempts to reach beyond these pleadings and grasp onto a purported third defect by stating that Defendant Kachkar amended his State Court pleadings without State Court approval when in fact Defendant Kachkar (and his spouse, Defendant Benkovitch) did receive State Court approval to amend such pleadings, including through Defendant Kachkar's motion for an enlargement of time to amend such pleadings.[6] More importantly though, such failed argument by the Plaintiff is without merit and beyond the scope of Defendant Kachkar's Notice of Removal and the matters outlined herein.

Therefore, for the foregoing reasons, and those outlined in Defendant Kachkar's Notice of Removal and Removal Status Report, Defendant Kachkar hereby respectfully requests that the Plaintiff's Corrected Motion to Remand be denied.

---

[6]     Please see Defendant Kachkar's amended pleadings consisting of his Answer, Affirmative Defenses and Counterclaim; the State Court Order granting him consent to amend such pleadings; and his subsequent Motion for Enlargement of time to amend such pleadings, which are all contained in the State Court records located in the Exhibits to the Notice of Removal. [Docket Entry No. 1].

9

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Defendant Kachkar certifies that he has conferred (or has made reasonable efforts to confer) with Plaintiff's counsel (and all other parties which may be affected by the relief sought in this motion) in a good faith effort to resolve the issues raised in this motion. No party has made an objection to the serving and filing of this Motion, but the issues raised by this opposition motion/response remain unresolved between Defendant Kachkar and the Plaintiff.

Dated:  August 24, 2012                                        Respectfully submitted,

                                                                       Jack Kachkar,
                                                                       Appearing Pro Se
                                                                       1210, 445 Grand Bay Drive
                                                                       Key Biscayne, Florida 33149
                                                                       Tel: (786) 972 6475
                                                                       Fax: (305) 361 0227

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing is being filed with the Court, and that the foregoing was also served by U.S. Mail on August 24, 2012 on all counsel or parties of record on the Service List below.

                                                                       Jack Kachkar,
                                                                       Appearing Pro Se
                                                                       1210, 445 Grand Bay Drive
                                                                       Key Biscayne, Florida 33149
                                                                       Tel: (786) 972 6475
                                                                       Fax: (305) 361 0227

## SERVICE LIST

Mr. Jeffrey A. Trinz, Esq.
Jeffrey.trinz@akerman.com
Akerman Senterfitt LLP,
One Southeast Third Avenue, 25th Floor,
Miami, Florida 33131-1714
Telephone: (305) 982-5532
Facsimile: (305) 374-5095
Attorneys for Plaintiff/Counterclaim Defendant(s) Countrywide Home Loans Servicing,
L.P., BAC Home Loans Servicing, L.P. ("BAC"), and Bank of America, N.A.

Mr. Kenneth J. Scherer, Esq.
Ken.scherer@gmlaw.com
Greenspoon Marder, P.A.,
One Clearlake Centre, 250 S. Australian Avenue, Suite 700,
West Palm Beach, Florida 33401
Telephone: (561) 899-2981
Facsimile: (561) 653-3937
Attorneys for Defendant/Cross-Claimant J.F. Brennan Design/Build, L.C.,

Ms. Cherine Smith Valbrun, Esq.
cvalbrun@wardkim.com
Ward Kim Vaughan & Lerner LLP,
One Financial Plaza, Suite 2001,
Ft. Lauderdale, Florida 33394
Telephone: (954) 527-1115
Facsimile: (954) 527-1116
Attorneys for Defendant Federal Deposit Insurance Corporation as Receiver for
Westernbank Puerto Rico

Ms. Viktoria Benkovitch
445 Grand Bay Drive, Unit 1210,
Key Biscayne, Florida 33149
Telephone: (786) 223-3979
Facsimile: (305) 361-0227
Defendant and Counterclaim Plaintiff, Appearing Pro Se

DEFENDANT JACK KACHKAR'S RESPONSE
AND INCORPORATED MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S CORRECTED MOTION TO REMAND

# EXHIBIT A

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 09-06672-CA-32

COUNTRYWIDE HOME LOANS SERVICING,
L.P.,

        Plaintiff,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, ET AL.,

        Defendants.

_____/

J.F. BRENAN DESIGN/BUILD, L.C.,

        Defendant/Cross-Claimant,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, ET AL.,

_____/

## NOTICE OF FILING AFFIDAVIT SUPPORTING PLAINTIFF'S MOTION FOR SUMMARY FINAL JUDGMENT

Plaintiff, Bank of America, N.A., by and through its undersigned counsel, hereby gives notice of filing plaintiff's affidavit supporting its motion for summary final judgment.

Respectfully submitted,

Jeffrey A. Trinz
Fla. Bar No. 0265683
E-Mail: jeffrey.trinz@akerman.com
Jeffrey S. Robin
Fla. Bar No. 0037822
E-Mail: jeffrey.robin@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue  25th Floor
Miami, Florida 33131-1714
305-374-5600 (ph)/305-374-5095 (fax)

{24410633;1}

CASE NO: 09-06672-CA-32

and

William P. Heller
Fla. Bar No. 987263
**AKERMAN SENTERFITT**
Las Olas Centre II
350 East Las Olas Blvd.  Suite 1600
Fort Lauderdale, Florida 33301
E-Mail: william.heller@akerman.com
954-759-8945(ph)/954-463-2224 (fax)
*Counsel for Bank of America, N.A.*

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that a true copy of the foregoing has been furnished by **Certified and U.S. Mail** to: **Jack Kachkar (pro se) and Victoria Benkovitch (pro se)**, 445 Grand Bay Drive, #1210, Key Biscayne, FL 33149; **by U.S. Mail** to: **Kenneth J. Scherer, Esq.**, Greenspoon Marder, P.A., 250 S. Australian Ave., Ste. 700, West Palm Beach, Florida 33401 and **Cherine Smith Valbrun, Esq.**, Ward Kim Vaughan & Lerner LLP, One Financial Plaza, Suite 2001, Ft. Lauderdale, Florida 33394 on this 20ᵗʰ day of June, 2012.

_____
Attorney

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 09-06672-CA-32

COUNTRYWIDE HOME LOANS SERVICING,
L.P.,

        Plaintiff,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, ET AL.,

        Defendants.

_____/

J.F. BRENAN DESIGN/BUILD, L.C.,

        Defendant/Cross-Claimant,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, ET AL.,

_____/

## AFFIDAVIT SUPPORTING PLAINTIFF'S MOTION
## FOR SUMMARY FINAL JUDGMENT

STATE OF ___TEXAS_____

COUNTY OF ___COLLIN_____

      BEFORE ME, an officer authorized to take oaths, this day personally appeared
___JOHN PARSONS_____ of Bank of America, N.A.,
successor by merger to BAC Home Loans Servicing L.P. f/k/a Countrywide Home Loans
Servicing, L.P. (**BANA**), who, being first duly sworn, deposes and says:

1.    I am authorized to sign this affidavit on behalf of BANA, as an officer of BANA, which
services the subject loan (**the Loan**) and is the plaintiff in this case.

2.    BANA maintains records for the Loan. As part of my job responsibilities for BANA, I
am familiar with the type of records maintained by BANA in connection with the Loan.

3.    The information in this affidavit is taken from BANA's business records. I have personal
knowledge of BANA's procedures for creating these records. They are: (a) made at or

{24375834;2}

CASE NO: 09-06672-CA-32

near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the regular practice of BANA to make such records. I personally confirmed that the loan information in this affidavit is accurate by reading the affidavit and attachments, and checking that the loan information in this affidavit matches BANA's on-line records available to me. After confirming the loan information in this affidavit is correct, I will sign this affidavit before a notary and under oath.

4. Plaintiff holds the promissory note for this Loan and possessed the original note, indorsed in blank, prior to filing the foreclosure complaint on January 28, 2009. A true and correct copy of the note is attached as **EXHIBIT A**. A true and correct copy of the mortgage is attached as **EXHIBIT B**. Based on my review of the business records, plaintiff holds the promissory note for this Loan and is the proper party to foreclose.

5. The business record attached hereto as **EXHIBIT C**, which I have reviewed, is a true and correct business records from BANA. It shows that Jack Kachkar defaulted on April 15, 2008, that the default has not been cured, that the Loan was accelerated, and the amount stated on the attached business record is owed on the Loan. Specifically, plaintiff is owed:

| | |
|---|---|
| Principal due: | $ 5,736,036.00 |
| Interest through 07/12/12 (per diem $666.07) | $ 1,113,042.36 |
| Pre-acceleration late charges | $ 0.00 |
| Escrow for Real Estate Taxes    (2006 – 2011) | $ 585,312.95 |
| Escrow for Insurance             (2009 – 2011) | $ 211,675.35 |
| Escrow Borrower credit of escrow overage | $ 0.00 |
| Property BPO/Preservation Fees | $ 380.00 |
| Property Inspection Fees | $ 63.00 |
| **GRAND TOTAL** | **$ 7,646,509.66** |

6. Mr. Kachkar was sent a notice of his non-payment default on May 2, 2008. A copy of this notice is attached as **EXHIBIT D**.

7. I personally confirmed that the loan information in this affidavit is accurate by reading the affidavit and attachments, and also confirming that the loan information in paragraph 5 above, matches BANA's on-line records available to me.

8. BANA has retained Akerman Senterfitt to prosecute this foreclosure action on plaintiff's behalf and is obligated to pay a reasonable fee and reimburse costs incurred in connection with the firm's services.

FURTHER AFFIANT SAYETH NOT.

CASE NO: 09-06672-CA-32

BANK OF AMERICA, N.A., AS SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING
L.P. F/K/A COUNTRYWIDE HOME LOANS
SERVICING, L.P.

By: _John Penions_

Title: _Vice President_

SWORN TO and subscribed before me this 20th day of _June_, 2012, by
_John Penions_, as _Vice President_ of Bank of America, N.A., as successor by
merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P.
He/she (X) is personally known to me or ( ) produced _____ as
identification.

Notary Public

Print Name: _Joyce Johnson_

My commission expires

**JOYCE JOHNSON**
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-08-13

{24375834;2}                                   3

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 09-06672-CA-32

COUNTRYWIDE HOME LOANS SERVICING, L.P.,

        Plaintiff,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA BENKOVITCH, ET AL.,

        Defendants.

_____/

J.F. BRENAN DESIGN/BUILD, L.C.,

        Defendant/Cross-Claimant,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA BENKOVITCH, ET AL.,

_____/

### NOTICE OF FILING ORIGINAL AFFIDAVIT SUPPORTING PLAINTIFF'S MOTION FOR SUMMARY FINAL JUDGMENT

    Plaintiff, Bank of America, N.A., by and through its undersigned counsel, hereby gives notice of filing plaintiff's original affidavit supporting its motion for summary final judgment.

Respectfully submitted,

*Jeffrey Trinz* (signature)

Jeffrey A. Trinz
Fla. Bar No. 0265683
E-Mail: jeffrey.trinz@akerman.com
Jeffrey S. Robin
Fla. Bar No. 0037822
E-Mail: jeffrey.robin@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue 25th Floor
Miami, Florida 33131-1714
305-374-5600 (ph)/305-374-5095 (fax)

{24410633;1}

1

CASE NO: 09-06672-CA-32

and

William P. Heller
Fla. Bar No. 987263
**AKERMAN SENTERFITT**
Las Olas Centre II
350 East Las Olas Blvd.  Suite 1600
Fort Lauderdale, Florida 33301
E-Mail: william.heller@akerman.com
954-759-8945(ph)/954-463-2224 (fax)
*Counsel for Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

*I HEREBY CERTIFY* that a true copy of the foregoing has been furnished by **Certified and U.S. Mail** to: **Jack Kachkar (pro se) and Victoria Benkovitch (pro se)**, 445 Grand Bay Drive, #1210, Key Biscayne, FL 33149; by **U.S. Mail** to: **Kenneth J. Scherer, Esq.**, Greenspoon Marder, P.A., 250 S. Australian Ave., Ste. 700, West Palm Beach, Florida  33401 and **Cherine Smith Valbrun, Esq.**, Ward Kim Vaughan & Lerner LLP, One Financial Plaza, Suite 2001, Ft. Lauderdale, Florida  33394 on this 25th day of June, 2012.

_____
Attorney

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL   CIRCUIT   IN   AND   FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 09-06672-CA-32

COUNTRYWIDE HOME LOANS SERVICING,
L.P.,

          Plaintiff,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, ET AL.,

          Defendants.

_____/

J.F. BRENAN DESIGN/BUILD, L.C.,

          Defendant/Cross-Claimant,

vs.

VICTORIA BENKOVITCH A/K/A VIKTORIA
BENKOVITCH, ET AL.,

_____/

## AFFIDAVIT SUPPORTING PLAINTIFF'S MOTION
## FOR SUMMARY FINAL JUDGMENT

STATE OF ____TEXAS_____

COUNTY OF _COLLIN_____

      BEFORE ME, an officer authorized to take oaths, this day personally appeared
____JOHN PARSONS_____ of Bank of America, N.A.,
successor by merger to BAC Home Loans Servicing L.P. f/k/a Countrywide Home Loans
Servicing, L.P. (**BANA**), who, being first duly sworn, deposes and says:

1.    I am authorized to sign this affidavit on behalf of BANA, as an officer of BANA, which
    services the subject loan (**the Loan**) and is the plaintiff in this case.

2.    BANA maintains records for the Loan.  As part of my job responsibilities for BANA, I
    am familiar with the type of records maintained by BANA in connection with the Loan.

3.    The information in this affidavit is taken from BANA's business records.  I have personal
    knowledge of BANA's procedures for creating these records.  They are: (a) made at or

CASE NO: 09-06672-CA-32

near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the regular practice of BANA to make such records. I personally confirmed that the loan information in this affidavit is accurate by reading the affidavit and attachments, and checking that the loan information in this affidavit matches BANA's on-line records available to me. After confirming the loan information in this affidavit is correct, I will sign this affidavit before a notary and under oath.

4.   Plaintiff holds the promissory note for this Loan and possessed the original note, indorsed in blank, prior to filing the foreclosure complaint on January 28, 2009. A true and correct copy of the note is attached as **EXHIBIT A**. A true and correct copy of the mortgage is attached as **EXHIBIT B**. Based on my review of the business records, plaintiff holds the promissory note for this Loan and is the proper party to foreclose.

5.   The business record attached hereto as **EXHIBIT C**, which I have reviewed, is a true and correct business records from BANA. It shows that Jack Kachkar defaulted on April 15, 2008, that the default has not been cured, that the Loan was accelerated, and the amount stated on the attached business record is owed on the Loan. Specifically, plaintiff is owed:

| | |
|---|---|
| Principal due: | $ 5,736,036.00 |
| Interest through 07/12/12 (per diem $666.07) | $ 1,113,042.36 |
| Pre-acceleration late charges | $ 0.00 |
| Escrow for Real Estate Taxes   (2006 – 2011) | $ 585,312.95 |
| Escrow for Insurance          (2009 – 2011) | $ 211,675.35 |
| Escrow Borrower credit of escrow overage | $ 0.00 |
| Property BPO/Preservation Fees | $ 380.00 |
| Property Inspection Fees | $ 63.00 |
| **GRAND TOTAL** | **$ 7,646,509.66** |

6.   Mr. Kachkar was sent a notice of his non-payment default on May 2, 2008. A copy of this notice is attached as **EXHIBIT D**.

7.   I personally confirmed that the loan information in this affidavit is accurate by reading the affidavit and attachments, and also confirming that the loan information in paragraph 5 above, matches BANA's on-line records available to me.

8.   BANA has retained Akerman Senterfitt to prosecute this foreclosure action on plaintiff's behalf and is obligated to pay a reasonable fee and reimburse costs incurred in connection with the firm's services.

FURTHER AFFIANT SAYETH NOT.

CASE NO: 09-06672-CA-32

BANK OF AMERICA, N.A., AS SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING
L.P. F/K/A COUNTRYWIDE HOME LOANS
SERVICING, L.P.

By: _John Parsons_

Title: _Vice President_

SWORN TO and subscribed before me this 20th day of _June_, 2012, by _John Parsons_, as _Vice President_ of Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P. He/she (X) is personally known to me or ( ) produced _____ as identification.

_____
Notary Public
Print Name: _Joyce Johnson_

My commission expires

```
JOYCE JOHNSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-08-13
```

Prepared by: MELISSA J. SHERK,



LOAN #: ▓▓▓▓3030

# ADJUSTABLE RATE NOTE
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

SEPTEMBER 29, 2006                              FLORIDA
    [Date]                    [City]              [State]

610 HARITA DR, KEY BISCAYNE, FL 33149
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 5,763,186.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.375 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
   (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on  MAY 01, 2008    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and be applied to interest before Principal. If, on  APRIL 01, 2038    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

   (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 35,954.78    . This amount may change.

   (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
The interest rate I will pay may change on the first day of SEPTEMBER,  2007 , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae UNIFORM INSTRUMENT                          Initials _____
Amended for Florida                                                                                                         Form 3528 6/01
▓▓ -166N(FL) (0107)      CHL (09/01)(d)          Page 1 of 3
                         VMP MORTGAGE FORMS - (800)521-7291



*23901*                         *3030000021661N*

**EXHIBIT**
**A**

LOAN #: [redacted]3030

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER                percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.375 % or less than 4.375 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN             calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Initials: _____

Form 3528 1/01

Page 2 of 3

LOAN #: [redacted]3030

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Jack Kachkar _______________ (Seal)
-Borrower

JACK KACHKAR by Victoria Benkovitch his attorney-in-fact

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: Michele Sjolander
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

*[Sign Original Only]*

Prepared by: MELISSA J. SHERK

**COUNTRYWIDE HOME LOANS, INC.**

DATE:        09/29/2006
BORROWER: JACK KACHKAR
CASE #:
LOAN #:              3030
PROPERTY ADDRESS: 610 WASHTA DR
                  KEY BISCAYNE, FL 33149

Branch #: 0000484
6400 LEGACY DR
PLANO, TX 75024
Phone: (800) 556-6086
Or Fax No.: (888) 898-1547

## CONSTRUCTION LOAN NOTE ADDENDUM
("Prime" Rate Index)

This Construction Loan Note Addendum amends and supplements the attached promissory note of the same date in the principal amount of $ 6,763,186.00    (the "Note") given by the undersigned ("Borrower") to the order of COUNTRYWIDE HOME LOANS, INC.
("Lender"), which is secured by a mortgage or deed of trust of the same date (the "Security Instrument") given by Borrower to Lender with respect to the property described in the Security Instrument (the "Property"). To the extent any provision of this Addendum is inconsistent with the Note, this Addendum shall apply.

    1.    Construction Loan Agreement. Borrower, Lender and a contractor are entering into a Construction Loan Agreement dated as of the same date as this Addendum (the "Agreement"), under which Lender has agreed to extend to Borrower a loan in an amount of up to the principal amount of the Note (the "Loan") to finance Borrower's construction of a residence and related improvements on the Property, on the terms and subject to the conditions set forth in the Agreement. The Agreement provides for Lender to make periodic disbursements of the proceeds of the Loan from time to time in the future (the "Advances"); provided however Lender shall not be obligated to advance on a cumulative basis any sums in excess of the face amount of the Note. The Note evidences Borrower's obligation to repay all Advances that Lender shall make under the Agreement, together with interest accrued on them. Borrower and Lender have not contracted to require written notation or evidence of each Advance to be made under the Note. The Security Instrument also secures Borrower's performance of the terms and conditions of the Agreement and this Addendum, including but not limited to such Advances made by Lender under the terms of the Agreement or Security Instrument, and although the indebtedness secured by the Security Instrument may increase or decrease from time to time, the total unpaid balance secured by the Security Instrument shall not exceed two times the face amount of the Note, together with accrued interest, and all of Lender's costs, expenses, and disbursements made under the Security Instrument.

    2.    Construction Period. In this Addendum, "Construction Period" means the period beginning on the date of this Addendum and ending on the Completion Date (as more specifically defined in the Agreement).

    3.    Interest and Payment Provisions in Note. Paragraphs 2 and 3 of the Note shall not apply during the Construction Period or during any other period when Section 3 of this Addendum applies.

    A.    Amount of Interest. Prior to the Completion Date, Borrower shall pay "Monthly Interest" on the outstanding principal balance as explained below.

    1.    The initial Interest Rate is    9.250  %. The Interest Rate may increase or decrease according to the following procedure: The "Interest Rate" shall be the "Index" plus a "Margin" rounded to the nearest one-eighth of one percentage point (0.125%). The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of each calendar month. The "Margin" is equal to    1.000   percentage point. The "Daily Periodic Rate" at any time equals the Interest Rate divided by 365, and shall change as the Interest Rate changes.

    2.    Any new Index value, and resulting change in the Daily Periodic Rate and Interest Rate, shall be effective as of the first calendar day of the calendar month in which such new Index value is established, without prior notice to the Borrower. If and when the Interest Rate and corresponding Daily Periodic Rate increase, the Monthly Interest to be paid by Borrower will increase as provided in paragraph B below.

    3.    My Interest Rate will never be greater than the maximum rate indicated in the Note. The Interest Rate is a simple interest rate.

CONV
• Construction Loan Addendum ("Prime" Rate Index)
20819-XX (10/02)(d)

Page 1 of 3





LOAN #: ████████3030

**B.    Monthly Interest.**

1.    Monthly Interest for each month shall be the Daily Periodic Rate applied to the "Average Daily Balance" on the Note for such month, then this product is multiplied by the number of days in such month.

2.    The "Average Daily Balance," is the Daily Balances for the applicable month divided by the total number of days in such month. The "Daily Balance" for each day in a month is the principal of the Note at the beginning of each day plus any new draws on such day minus any principal payments or credits on such day.

3.    Lender will send to Borrower a monthly statement. The statement will show the activity during the applicable month, including the Monthly Interest due.

4.    Beginning on October 15th , 2006  , and on the 15th        day of each subsequent month during the Construction Period, Borrower shall pay Lender the Monthly Interest for the preceding month. Payments of Monthly Interest will be credited as of the day of receipt. Payment of the Monthly Interest due will not reduce the principal balance of the Note

**C.    Permanent Phase Payments.**

Upon the first        day of the first month following the month in which the earlier to occur of the Completion Date of disbursement of all Loan Proceeds (whether or not any principal has been prepaid), interest shall accrue in accordance with the terms of the Note, and Borrower shall make regular payments of principal and interest, as provided for in the Note, commencing on the first        day of the second month following the month in which such earlier event occurs, and shall continue until the Note is paid in full. In the event the first Change Date in the Note occurs prior to the Completion Date, the changes on the Change Date shall apply to the interest rate and payment of principal and interest under the Note and be effective when the changes provided for in this Subsection are effective.

**4.    Changes in Interest Rate and Payment Terms after Construction Period.**

Borrower hereby has the option to modify the interest rate and payment terms of the indebtedness evidenced by the Note to the rates and programs then being offered by Lender for permanent financing in connection with its combined construction and permanent loan program (the "One Time Close Loan Program"), and extend the maturity date of the Note for a full 30 years in accordance with the terms and conditions of this *Section 4* option (the "Option").

In order to exercise the Option, Borrower must satisfy all of the following conditions:

(a)    on or before the end of the Construction period, Borrower must contact Lender to determine what interest rate and payment terms are then available for Borrower and give Lender a written notice specifying which interest rate and payment terms Borrower wants to apply to the Note (the "Selected Rate and Terms");

(b)    Lender must be issuing commitments to make residential, first mortgage loans, at the Selected Rate and Terms, in the same principal amount as the principal amount of the Note and in the same geographic area in which the Property is located for the permanent financing portion of loan under its One Time Close Construction Loan Program at the time the Selected Rate and Terms are to be effective;

(c)    The interest rate and monthly payment of the Selected Rate and Terms (the "Rate and Payment") may not be greater than the maximum interest rate or monthly payment that Borrower qualified for by Lender when applying for the Note (the "Maximum Qualifying Rate and Payment"); provided however that Borrower may elect to pay applicable points or to reduce the principal balance to cause the Rate and Payment to be not greater than the Maximum Qualifying Rate and Payment

(d)    There must not then exist an "Event of Default" under the Note or the Agreement;

(e)    All conditions for making the Final Draw under the Agreement have been satisfied; and

(f)    Within ten (10) days after Lender gives Borrower written notice requiring Borrower to do so, Borrower must sign and deliver to Lender (i) a loan modification agreement, in a form prepared by Lender, under which the interest rate and payment terms provided for the Note are modified, and (ii) all other instruments, documents and agreements that Lender requires to implement the modifications and to enable Lender to sell the Note, including any renewal, amendment and restatement, extension or modifications of it, to any institutional purchaser of mortgage loans in the so-called "secondary market".

If all the conditions herein are satisfied, the interest rate of the Rate and Payment shall be effective on the first day of the month immediately following the month in which Lender confirms that all the above conditions have been satisfied, and the payment amount of the Rate and Payment shall be effective on the first        day of the second month following such confirmation.

*J. R.*

LOAN #: ████ 3030

5.    ACCELERATION. THE UNPAID PRINCIPAL BALANCE ON THE LOAN AND ALL INTEREST ACCRUED ON IT MAY BECOME, OR MAY BE DECLARED BY LENDER TO BE IMMEDIATELY DUE AND PAYABLE IN THE MANNER AND FOR THE REASONS DESCRIBED IN THE SECURITY INSTRUMENT OR IN THE AGREEMENT OR IN THE NOTE. IF THAT OCCURS THEN LENDER SHALL HAVE NO OBLIGATION TO MODIFY THE INTEREST RATE ON THE LOAN, WHETHER OR NOT THE APPLICABLE REQUIREMENTS AND CONDITIONS OF PARAGRAPH 4 OF THIS ADDENDUM HAVE BEEN SATISFIED.

6.    Lender's Records. Lender's records shall be prima facie evidence of all Advances made by Lender, or all payments of interest and principal made by Borrower and of the indebtedness outstanding under the Note at any time.

7.    Adjustments. Notwithstanding anything in the Security Instrument or the Note to the contrary, if the actual Completion Date does not occur on the Scheduled Completion Date, and the Note provides for a maturity date which adds the originally anticipated construction period together with the permanent financing period, then Lender may at its option extend or shorten the maturity date in the Note and Security Instrument so that the remaining term is equivalent to the permanent financing period. Similarly, if the Note is converted into a permanent loan, meaning that Borrower is to commence paying amortizing payments, if the total Loan proceeds advanced and outstanding at the time of such conversion are less than the principal amount on the Note, then Lender may at its option re-amortize the payments under the Note and reduce Borrower's monthly payment. If Lender opts to do either of the foregoing, Lender shall give Borrower notice of such new maturity date or reduced payment amount. Borrower hereby consents to the foregoing, and no further consent is required hereafter.

_Jack Kachkar_  9/29/06
Borrower                                    Date                    Borrower                                    Date
JACK KACHKAR  by Victoria Bonkovitch his
                  attorney-in-fact

Borrower                                    Date                    Borrower                                    Date

_J. K._

CONV
*   Construction Loan Note Addendum ("PY/mo" Rate Index)
00919.XX (10/02)                                                   Page 3 of 3

 

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
This document was prepared by:
MELISSA J. SHENK
COUNTRYWIDE HOME LOANS, INC.

6400 LEGACY DR
PLANO
TX 75024

CFN 2006R1139616
OR Bk 25003 Pgs 3610 - 3633; (24pgs)
RECORDED 10/23/2006 12:54:58
MTG DOC TAX 20,171.20
INTANG TAX 11,526.37
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

—————————[Space Above This Line For Recording Data]—————————

303009006
[Doc ID #]

## MORTGAGE
MIN                    544-6

900000701          KACHKAR    J
3030   D2  001  001

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated  SEPTEMBER 29, 2006 , together
with all Riders to this document.
(B) "Borrower" is
JACK KACHKAR, A MARRIED MAN  JOINED BY HIS WIFE VICTORIA BENKOVITCH

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(E) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 29, 2006 . The
Note states that Borrower owes Lender
FIVE MILLION SEVEN HUNDRED SIXTY THREE THOUSAND ONE HUNDRED EIGHTY SIX and
00/100
Dollars (U.S. $ 5,763,186.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  APRIL 01, 2038,
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 11
-6A(FL) (0005)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291        Form 3010 1/01
CONVVA

 

*23991*        *030000070008A*



EXHIBIT
B

DOC ID #: ▮▮▮▮303009006

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [X] Other(s) [specify]
                                                        OTC CONSTRUCTION MTG RDRS

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

         COUNTY             of             MIAMI-DADE         :
    [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

*Y.K. V.B*

-6A(FL) (0005)       CHL (08/05)       Page 2 of 11            Form 3010 1/01

Parcel ID Number:

DOC ID #: ███████303009006
which currently has the address of

610 MASHTA DR, KEY BISCAYNE
[Street/City]

Florida 33149 ("Property Address"):
(Zip Code)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

VMP ·6A(FL)(0005)   CHL (08/05)   Page 3 of 11   Form 3010 1/01

*J.K. V.B*

DOC ID #: ░░░░░░░░03009006

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

░ -6A(FL) (0005)    CHL (08/05)    Page 4 of 11    *J.K. ViB*    Form 3010 1/01

DOC ID #: ____303009006

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0006)     CHL (08/05)     Page 5 of 11     Form 3010 1/01

JK V.B

DOC ID #: ████████303009006

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purpose. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

@ -6A(FL) (0005)          CHL (08/05)          Page 6 of 11          Form 3010 1/01

YK V.B

DOC ID #: ████████03009006

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

VMP ─6A(FL) (0005)                   CHL (08/05)          Page 7 of 11                        Form 3010 1/01

J.K. V.B

DOC ID #: ████████003009006

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

V.B  YK

DOC ID #: ███████03009006

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to

Y.K. V.B

DOC ID #: ████████03009006

which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

███ -6A(FL) (0005)        CHL (08/05)        Page 10 of 11        Form 3010  1/01

J.K.   V.B

DOC ID #: ████████303009006

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____     _Jack Kachkar_____ (Seal)
YVETTE GOMES                           JACK KACHKAR by Victoria Benkovitch his -Borrower
                                       20 GRANDBAY ESTATES attorney-in-fact
                                       MIAMI FL 33019                    (Address)

_____     _V. Benkovitch_____ (Seal)
Andreas Claret                         VICTORIA BENKOVITCH       -Borrower

                                       _____ (Address)

                                       _____ (Seal)
                                                                 -Borrower

                                       _____ (Address)

                                       _____ (Seal)
                                                                 -Borrower

                                       _____ (Address)


STATE OF FLORIDA,
                                                            County ss: Miami Dade
    The foregoing instrument was acknowledged before me this 29 day of September 2006 by
VICTORIA BENKOVITCH, INDIVIDUALLY AND VICTORIA BENKOVITCH IN HER
CAPACITY AS ATTORNEY IN FACT FOR JACK KACHKAR,
_____
_____
_____

who is personally known to me or who has produced _Drivers License_ as identification.

                                       _____
                                       Notary Public

[notary seal]

BON-6A(FL) (0005)        CHL (08/05)        Page 11 of 11        Form 3010 1/01

Prepared by: MELISSA J. SHERK

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0000484
6400 LEGACY DR
PLANO, TX 75024
Phone: (800)556-6086
Br Fax No.: (888)898-1547

DATE:        09/29/2006
CASE #:
DOC ID #:            303009006
BORROWER: JACK KACHKAR
PROPERTY ADDRESS: 610 MASHTA DR
                 KEY BISCAYNE, FL 33149

## LEGAL DESCRIPTION EXHIBIT A

Lot 12, Block 3, REPLAT OF TRACTS A,B and C of MASHTA ISLAND,
according to the Plat thereof, as recorded in Plat Book 65, Page 65, of the
Public Records of Miami-Dade County, Florida.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)





J.K. V.B

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MELISSA J. SHERK
COUNTRYWIDE HOME LOANS, INC.

6400 LEGACY DR
PLANO
TX 75024

 303009006
[DOC ID #]

THIS 1-4 FAMILY RIDER is made this TWENTY-NINTH    day of SEPTEMBER, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
610 MASHTA DR
KEY BISCAYNE, FL 33149
[Property Address]

1-4 FAMILY COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-57R (0401).01     CHL (06/04)(d)       Page 1 of 3                          Initials:_____
VMP Mortgage Solutions, Inc. (800)521-7291                        Form 3170 1/01

 

DOC ID #: ████████003009006

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

███-57R (0401).01 CHL (08/04)          Page 2 of 3                    Form 3170 1/01

Initials: _____

*J.K. V.B*

DOC ID #: ~~~~~~303009006

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Jack Kachkar_ _____(Seal)
JACK KACHKAR by Victoria Benkovitch his attorney-in-fact - Borrower
20 GRANDBAY ESTATES
MIAMI, FL 33149

_V. Benkovich_ _____(Seal)
VICTORIA BENKOVITCH - Borrower

_____(Seal)
- Borrower

_____(Seal)
- Borrower

-67R (0401).01 CHL (06/04)        Page 3 of 3        Form 3170 1/01

## ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MELISSA J. SHERK
COUNTRYWIDE HOME LOANS, INC.

6400 LEGACY DR
PLANO
TX 75024

[REDACTED]303009006
[DOC ID #]

THIS ADJUSTABLE RATE RIDER is made this  TWENTY--NINTH        day of
SEPTEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

G10 MASHTA DR
KEY BISCAYNE, FL 33149
[Property Address]

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae
UNIFORM INSTRUMENT                                            Initials:_____
VMP®-166R (0401)   CHL (08/04)(d)        Page 1 of 4          Form 3189 6/01
VMP Mortgage Solutions, Inc. (800)521-7291



DOC ID #: ███████303009006

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of        6.375 %. The Note
provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Date
The interest rate I will pay may change on the first day of SEPTEMBER, 2007, and on
that day every 12th month thereafter. Each date on which my interest rate could change is called a
"Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is
the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London
market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as
of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon
comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by
TWO & ONE-QUARTER             percentage points (    2.250 %) to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount
will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient
to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity
date at my new interest rate in substantially equal payments. The result of this calculation will be the
new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than
  8.375 % or less than      4.375 %. Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than two percentage points from the rate of
interest I have been paying for the preceding 12 months. My interest rate will never be greater than
 12.375 %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my
new monthly payment beginning on the first monthly payment date after the Change Date until the
amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the
amount of my monthly payment before the effective date of any change. The notice will include
information required by law to be given to me and also the title and telephone number of a person
who will answer any question I may have regarding the notice.

Initials: _____

██-168R (0401)       CHL (06/04)       Page 2 of 4                    Form 3189 6/01

YK   V.B

DOC ID #: ███████ 303009006

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

@ -109H (0401)    CHL (06/04)    Page 3 of 4    Form 3189 6/01

V.B  JK

DOC ID #: ███████303009006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Jack Kachkar_ _____ (Seal)
JACK KACHKAR  by  Victoria Benkovitch his attorney-in-fact  - Borrower

_V. Benkovitch_ _____ (Seal)
VICTORIA BENKOVITCH                                - Borrower

_____ (Seal)
                                                   - Borrower

_____ (Seal)
                                                   - Borrower

CNB -166R (0401)      CHL (06/04)      Page 4 of 4                Form 3189 6/01

# SECOND HOME RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
MELISSA J. SHERK
COUNTRYWIDE HOME LOANS, INC.


6400 LEGACY DR
PLANO
TX 75024

███████303009006
[Doc ID #]

THIS SECOND HOME RIDER is made this TWENTY-NINTH     day of
SEPTEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"),
which is located at:
610 MASHTA DR
KEY BISCAYNE, FL 33149
[Property Address]


MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                              Page 1 of 2               Initials: _____
●●● -365R (0405)  CHL (06/04)(d)                                        Form 3890 1/01
            VMP Mortgage Solutions, Inc. (800)521-7291





*V.B. S.K.*

DOC ID #: ████████303009006

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

6. Occupancy. Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_Jack Kachkar._ _____ (Seal)
JACK KACHKAR by Victoria Benkovitch his attorney-in- - Borrower
20 GRANDBAY ESTATES                                      fact
MIAMI, FL 31149

_V Benkovitch_ _____ (Seal)
VICTORIA BENKOVITCH                                    - Borrower

_____ (Seal)
                                                       - Borrower

_____ (Seal)
                                                       - Borrower

VMP®-365R (0405)   CHL (06/04)          Page 2 of 2                 Form 3890 1/01

[Space Above This Line For Recording Data]

## DEED OF TRUST, MORTGAGE RIDER
## FOR CONSTRUCTION LOAN

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MELISSA J. SHERK
COUNTRYWIDE HOME LOANS, INC.

6400 LEGACY DR
PLANO
TX 75024



303009006
[Doc ID #]

THIS DEED OF TRUST, MORTGAGE RIDER FOR CONSTRUCTION LOAN (this "Rider") is made as of SEPTEMBER 29, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") and covering the property described in the Security Instrument and located at:
610 MASHTA DR
KEY BISCAYNE, FL 33149
(the "Property").

ADDITIONAL COVENANTS. In addition to the covenants made in the Security Instrument, Borrower further covenants and agrees as follows:

CONV
• CCL - DOT/Mortgage Rider
2D251-XX (07/01)(d)

Page 1 of 3

Initials: _____



𝒥𝓡.

DOC ID #: ███████303009006

1. **Construction Loan Agreement.** Concurrently herewith, Borrower has executed and delivered to Lender that certain Construction Loan Agreement with Security Agreement (the "Loan Agreement") and that certain Construction Loan Addendum to Note (the "Addendum"). The Security Agreement shall also secure Borrower's performance of Borrower's payment and performance of the terms and conditions of the Loan Agreement and the Addendum. A default by Borrower under the terms and conditions of the Loan Agreement or the Addendum (including but not limited to the obligation to complete the Improvements in accordance with the terms of the Loan Agreement) shall constitute a default under the Note and Security Instrument and entitle Lender to all rights and remedies thereunder. All terms not otherwise defined herein shall have the meaning ascribed thereto in the Loan Agreement.

2. **Advances.** The loan evidenced by the Note will be advanced to Borrower pursuant to the Loan Agreement. Lender shall not be obligated to advance on a cumulative basis any sums in excess of the face amount of obligations evidenced by the Note; provided however the amounts secured hereunder shall include such principal amount, whether advanced as of the date hereof or in the future, together with such other expenditures by Lender made in accordance with the Loan Agreement or the Security Agreement, all just as if the advance or other expenditure was made on the date of this Security Instrument. The total amount of the indebtedness secured by this Security Instrument may increase or decrease from time to time, but the total unpaid balance secured by this Security Instrument shall not exceed two times the amount of the Note, together with accrued interest and all of Lender's costs, expenses, and disbursements made under this Security Instrument. Borrower and Lender have not contracted to require written notation or evidence of each future advance to be made under the Note.

3. **Security Agreement; Fixture Filing.** As such terms are defined in the applicable State Commercial Code, the "Debtor" is Borrower, having an address of the Property, and the "Secured Party" is Lender, having an address for the transaction of business as shown for Lender on the first page of the Security Instrument. The term "Property" as used in the Security Instrument shall also include all items of personal property of any kind whatsoever, building materials, appliances, equipment, machinery, goods and fixtures (collectively, "personal property") now or hereafter located on or attached or affixed to the real property described therein, the cost of which was paid, in whole or in part, from the proceeds of the loan made by Lender to Borrower pursuant to the Loan Agreement and Borrower hereby grants to Lender a security interest in and to the personal property and all proceeds hereof. To the extent of the existence of personal property encumbered by the Security Instrument, as herein modified, the Security Instrument constitutes a security agreement and is intended to create a security interest in such personal property in favor of Lender and to constitute a "fixture filing" in accordance with the provisions of the Uniform Commercial Code of the state where the real property is located, and all rights and remedies of a secured party under the Uniform Commercial Code in the event of any breach of any covenant or agreement in the Security Instrument. The Security Instrument shall be self-operative with respect to such personal property, but Borrower shall execute and deliver such financing statements, security agreements or other instruments as Lender may request in order to perfect Lender's security interest in the personal property; notwithstanding however Borrower authorizes Lender as the Secured Party to file such other financing statements as Secured Party may believe appropriate, without obtaining the signature of Borrower as Debtor. The Security Instrument constitutes a fixture filing with respect to any and all fixtures or any goods which may now be or may hereafter become fixtures included within the term "Property."

4. **Miscellaneous.** Except as modified, amended or supplemented herein, all other terms and conditions of the Security Instrument shall remain unchanged and shall be applicable and govern on and after the date hereof until the Note and all amounts secured by the Security Interest shall be paid in full. Borrower shall, upon request of Lender from time to time, execute, acknowledge, deliver and/or record such additional documents, instruments and agreements as Lender may require to confirm or evidence the occurrence of the Completion Date.

5. **Adjustments.** Notwithstanding anything in the Security Instrument or Note to the contrary, if the actual Completion Date does not occur on the Scheduled Completion Date, then Lender may at its option extend or shorten the maturity date in the Note and Security Instrument to provide the same period of time for Borrower's repayment as provided in the Note. Similarly, if the total Loan Proceeds advanced and outstanding at the time of the Completion Date are less than the principal amount indicated on the Note, then Lender may at its option re-amortize the payments under the Note and reduce the Borrower's monthly payment. If Lender opts to do either of the foregoing, Lender shall give Borrower notice of such new maturity date or reduced payment amount. Borrower hereby consents to the foregoing, and no further consent is required hereafter.

CONV
* CCL - DOTAMortgage Rider
2D151-XX (07/01)                    Page 2 of 3                    Initial: _____


*Y. K.*

OR BK 25033 PG 3633
LAST PAGE

DOC ID #:                303009006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

*Jack Kochkar*                                              (Seal)
JACK KACHKAR by Victoria Benkovitch his attorney-in- - Borrower
20 GRANDBAY ESTATES                                     fact
MIAMI, FL 31149

_____ (Seal)
                                                        - Borrower

*V. Benkovich*                                          (Seal)
VICTORIA BENKOVITCH                                     - Borrower

_____ (Seal)
                                                        - Borrower


Commonwealth/State of Florida,
District/County/Parish of Miami-Dade
On this 29th  day of  Sept.       2006    , before me, a Notary, personally appeared

VICTORIA BENKOVITCH, INDIVIDUALLY, AND VICTORIA BENKOVITCH IN HER
CAPACITY AS ATTORNEY IN FACT FOR JACK KACHKAR,

to me personally known, who, being by me duly sworn (or affirmed), did say that he/she is the
-of-
and that the seal affixed to the instrument is the corporate seal
of the corporation (or association) by authority of its board of directors (or trustees), and

acknowledged the instrument to be the free act and deed of the corporation.

ANDRES M. URRETA
Notary Public - State of Florida
My Commission Expires Nov 14, 2009
Commission # DD 489256
Bonded By National Notary Assn.

CONV
* CCL * DOTMortgage Rider
20251-XX (07/01)                    Page 3 of 3                    Initials: _____

CRPRDNRBS35b           6/13/2012 11:52:43 AM   PAGE   2/015   Fax Server

C3_1032_LNHISTF 14926 04/24/2012

Bank of America
Home Loans
*P.O. Box 5170*
*Simi Valley, CA 93062-5170*

Notice Date: 06/13/2012

JACK KACHKAR
445 GRAND BAY DR APT 1210
KEY BISCAYNE, FL 33149

Account No.: ▓▓▓3030

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

Enclosed is the loan history statement you requested that provides a detailed outline of transactions for the above-referenced loan. This statement provides a history of information on payments received from you, servicing expenses we have paid to third parties, tax and insurance payments paid on your behalf, and any late charges assessed and paid.

**Important Note:** If you recently received a loan modification that included deferral of a part of your principal balance into a non-interest bearing portion, that deferred portion is not reflected in the figures contained in this letter. Your total unpaid balance includes that portion, and you can obtain that information from your modification agreement, your monthly statement, or by calling us toll-free at 1-800-669-6607, Monday-Friday 7a.m. - 7p.m. Local Time.

**THANK YOU**

If you have any questions, please call us toll-free at 1-800-669-6607, Monday-Friday 7a.m. - 7p.m. Local Time.

We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.



**BankofAmerica**
Home Loans

Account Number: ▓▓▓3030
Statement Period: 09/2006 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 3

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | Beginning Balance | | | .00 | | .00 | | | | .00 |
| 09/29/2006 | INITIAL DRAW | 3,532,728.61 | 09/2006 | -3,532,728.61 3,532,728.61 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/02/2006 | SUBSEQUENT DRAW | 1,790.56 | 10/2006 | -1,790.56 3,534,519.17 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/02/2006 | REGULAR PAYMENT | 1,790.56 | 10/2006 | .00 3,534,519.17 | 1,790.56 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/02/2006 | INITIAL INS DEP | 6,000.00 | 04/2006 | .00 3,534,519.17 | .00 | 6,000.00 6,000.00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/02/2006 | INITIAL TAX DEP | -6,000.00 | 04/2006 | .00 3,534,519.17 | .00 | -6,000.00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/05/2006 | INITIAL INS DEP | 6,000.00 | 04/2006 | .00 3,534,519.17 | .00 | 6,000.00 6,000.00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/05/2006 | INITIAL TAX DEP | -6,000.00 | 04/2006 | .00 3,534,519.17 | .00 | -6,000.00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/05/2006 | INITIAL INS DEP | -6,000.00 | 04/2006 | .00 3,534,519.17 | .00 | -6,000.00 -6,000.00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/05/2006 | INITIAL TAX DEP | 6,000.00 | 04/2006 | .00 3,534,519.17 | .00 | 6,000.00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/01/2006 | SUBSEQUENT DRAW | 27,767.76 | 11/2006 | -27,767.76 3,562,286.93 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/01/2006 | REGULAR PAYMENT | 27,767.76 | 11/2006 | .00 3,562,286.93 | 27,767.76 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/03/2006 | SUBSEQUENT DRAW | 150,000.00 | 11/2006 | -150,000.00 3,712,286.93 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/03/2006 | SUBSEQUENT DRAW | 150,000.00 | 11/2006 | -150,000.00 3,862,286.93 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/03/2006 | SUBSEQUENT DRAW | 150,000.00 | 11/2006 | -150,000.00 4,012,286.93 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/03/2006 | SUBSEQUENT DRAW | 122,000.00 | 11/2006 | -122,000.00 4,134,286.93 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

CRPRDNRBS36b          8/13/2012 11:52:43 AM   PAGE   4/015    Fax Server

**BankofAmerica**
*Home Loans*

Page 4

| Account Number: | ▆▆▆3030 |
| Statement Period: | 08/2006 - 08/2012 |
| Date Prepared: | 08/13/2012 |

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

| Transaction Date | Description | PMT No | Total Payment | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/16/2006 | REGULAR PAYMENT | 11/2006 | 1,000.00 | 1,000.00 / 4,133,296.93 | .00 | .00 | .00 | .00 | .00 | .00 |
| 12/01/2006 | SUBSEQUENT DRAW | 12/2006 | 30,268.43 | 30,268.43 / 4,163,555.36 | .00 | .00 | .00 | .00 | .00 | .00 |
| 12/01/2006 | REGULAR PAYMENT | 12/2006 | 30,268.43 | .00 / 4,163,555.36 | 30,268.43 | .00 | .00 | .00 | .00 | .00 |
| 01/02/2007 | SUBSEQUENT DRAW | 01/2007 | 32,708.58 | 32,708.58 / 4,196,264.34 | .00 | .00 | .00 | .00 | .00 | .00 |
| 01/02/2007 | REGULAR PAYMENT | 01/2007 | 32,708.58 | .00 / 4,196,264.34 | 32,708.58 | .00 | .00 | .00 | .00 | .00 |
| 01/22/2007 | SUBSEQUENT DRAW | 01/2007 | 150,000.00 | 150,000.00 / 4,346,264.34 | .00 | .00 | .00 | .00 | .00 | .00 |
| 01/22/2007 | SUBSEQUENT DRAW | 01/2007 | 150,000.00 | 150,000.00 / 4,496,264.34 | .00 | .00 | .00 | .00 | .00 | .00 |
| 01/22/2007 | SUBSEQUENT DRAW | 01/2007 | 75,000.00 | 75,000.00 / 4,571,264.34 | .00 | .00 | .00 | .00 | .00 | .00 |
| 02/01/2007 | SUBSEQUENT DRAW | 02/2007 | 33,916.89 | 33,916.89 / 4,605,181.23 | .00 | .00 | .00 | .00 | .00 | .00 |
| 02/01/2007 | REGULAR PAYMENT | 02/2007 | 33,916.89 | .00 / 4,605,181.23 | 33,916.89 | .00 | .00 | .00 | .00 | .00 |
| 03/01/2007 | SUBSEQUENT DRAW | 03/2007 | 32,677.57 | 32,677.57 / 4,637,858.70 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/01/2007 | REGULAR PAYMENT | 03/2007 | 32,677.57 | .00 / 4,637,858.70 | 32,677.57 | .00 | .00 | .00 | .00 | .00 |
| 04/02/2007 | SUBSEQUENT DRAW | 04/2007 | 36,425.79 | 36,425.79 / 4,674,285.49 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/02/2007 | REGULAR PAYMENT | 04/2007 | 36,425.79 | .00 / 4,674,285.49 | 36,425.79 | .00 | .00 | .00 | .00 | .00 |

**Bank of America**
Home Loans

Account Number: ...3080
Statement Period: 09/2006 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S NASHTA DR
KEY BISCAYNE, FL 33149

Page 5

| Transaction Date | Description | Total Payment | PMT/No | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/03/2007 | SUBSEQUENT DRAW | 150,000.00 | 04/2007 | -150,000.00 4,824,255.49 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 04/03/2007 | SUBSEQUENT DRAW | 150,000.00 | 04/2007 | -150,000.00 4,974,255.49 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/01/2007 | SUBSEQUENT DRAW | 37,668.22 | 05/2007 | -37,668.22 5,011,961.71 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/01/2007 | REGULAR PAYMENT | 37,668.22 | 05/2007 | .00 5,011,961.71 | 37,668.22 | .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/23/2007 | SUBSEQUENT DRAW | 150,000.00 | 05/2007 | -150,000.00 5,161,961.71 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/23/2007 | SUBSEQUENT DRAW | 75,000.00 | 05/2007 | -75,000.00 5,236,961.71 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/01/2007 | SUBSEQUENT DRAW | 33,887.96 | 06/2007 | -33,887.96 5,276,849.69 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/01/2007 | REGULAR PAYMENT | 33,887.96 | 06/2007 | .00 5,276,849.69 | 33,887.96 | .00 | .00 | .00 | .00 .00 | .00 .00 |
| 07/02/2007 | SUBSEQUENT DRAW | 40,118.51 | 07/2007 | -40,118.51 5,316,968.20 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 07/02/2007 | REGULAR PAYMENT | 40,118.51 | 07/2007 | .00 5,316,968.20 | 40,118.51 | .00 | .00 | .00 | .00 .00 | .00 .00 |
| 08/01/2007 | SUBSEQUENT DRAW | 41,770.98 | 08/2007 | -41,770.98 5,358,739.18 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 08/01/2007 | REGULAR PAYMENT | 41,770.98 | 08/2007 | .00 5,358,739.18 | 41,770.98 | .00 | .00 | .00 | .00 .00 | .00 .00 |
| 09/17/2007 | SUBSEQUENT DRAW | 150,000.00 | 09/2007 | -150,000.00 5,508,739.18 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 09/17/2007 | SUBSEQUENT DRAW | 10,000.00 | 09/2007 | -10,000.00 5,518,739.18 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

CRPRDNRBS35b       8/13/2012 11:52:43 AM   PAGE   8/015   Fax Server

**Bank of America**
**Home Loans**

Account Number: ****5330
Statement Period: 08/2006 - 08/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 6

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/04/2007 | SUBSEQUENT DRAW | 42,707.36 | 09/2007 | -42,707.36<br>5,591,445.54 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/04/2007 | REGULAR PAYMENT | 42,707.36 | 09/2007 | .00<br>5,591,445.54 | 42,707.36 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/01/2007 | SUBSEQUENT DRAW | 42,282.23 | 10/2007 | -42,282.23<br>5,633,728.77 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/01/2007 | REGULAR PAYMENT | 42,282.23 | 10/2007 | .00<br>5,633,728.77 | 42,282.23 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/01/2007 | SUBSEQUENT DRAW | 44,023.81 | 11/2007 | -44,023.81<br>5,647,752.58 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/01/2007 | REGULAR PAYMENT | 44,023.81 | 11/2007 | .00<br>5,647,752.58 | 44,023.81 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/03/2007 | SUBSEQUENT DRAW | 39,456.90 | 12/2007 | -39,456.90<br>5,687,209.48 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/03/2007 | REGULAR PAYMENT | 39,456.90 | 12/2007 | .00<br>5,687,209.48 | 39,456.90 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/17/2007 | PAYMENT REVERSAL | -39,456.90 | 12/2007 | .00<br>5,647,209.48 | -39,456.90 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/17/2007 | SUBSEQUENT DRAW | -39,456.90 | 12/2007 | 39,456.90<br>5,647,752.58 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/17/2007 | PAYMENT REVERSAL | -44,023.81 | 11/2007 | .00<br>5,647,752.58 | -44,023.81 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/17/2007 | SUBSEQUENT DRAW | -44,023.81 | 10/2007 | 44,023.81<br>5,603,728.77 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/17/2007 | MISC. POSTING | .01 | 12/2007 | .01<br>5,603,728.76 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/17/2007 | SUBSEQUENT DRAW | 44,023.81 | 12/2007 | -44,023.81<br>5,647,752.57 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |

**Bank of America**
Home Loans

Account Number: ****3030
Statement Period: 09/2006 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 7

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/17/2007 | REGULAR PAYMENT | 41,654.70 | 12/2007 | .00 / 5,647,732.57 | 41,654.70 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/17/2007 | MISC. POSTING | 2,368.11 | 12/2007 | 2,368.11 / 5,645,383.46 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/17/2007 | SUBSEQUENT DRAW | 39,456.90 | 12/2007 | -39,456.90 / 5,684,843.36 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/17/2007 | REGULAR PAYMENT | 39,449.54 | 12/2007 | .00 / 5,684,340.36 | 39,449.54 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/17/2007 | MISC. POSTING | 7.36 | 12/2007 | 7.36 / 5,684,333.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/18/2007 | MISC. POSTING | -.01 | 12/2007 | -.01 / 5,684,333.01 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/02/2008 | SUBSEQUENT DRAW | 41,039.82 | 01/2008 | -41,039.82 / 5,725,872.83 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/02/2008 | REGULAR PAYMENT | 41,039.82 | 01/2008 | .00 / 5,725,872.83 | 41,039.82 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/01/2008 | SUBSEQUENT DRAW | 37,002.78 | 02/2008 | -37,002.78 / 5,762,875.61 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/01/2008 | REGULAR PAYMENT | 37,002.78 | 02/2008 | .00 / 5,762,875.61 | 37,002.78 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/13/2008 | REGULAR PAYMENT | 3,007.53 | 02/2008 | 3,007.53 / 5,762,875.61 | 3,007.53 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/16/2008 | REGULAR PAYMENT | 26,633.61 | 02/2008 | 26,633.61 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/30/2008 | REGULAR PAYMENT | 66,131.36 | 04/2008 | 5,736,036.00 | 66,131.36 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/06/2008 | PAYMENT REVERSAL | -66,131.36 | 04/2008 | .00 / 5,736,036.00 | -66,131.36 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

**Bank of America**
**Home Loans**

Account Number: ****3330
Statement Period: 09/2006 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE FL 33149

Page 3

| Transaction Date | Description | Total Payment | PMT/No | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/06/2008 | REGULAR PAYMENT | -34,167.67 | 03/2008 | .00 / 5,736,036.00 | -34,167.67 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/06/2008 | PAYMENT REVERSAL | -34,167.67 | 03/2008 | .00 / 5,736,036.00 | -34,167.67 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/10/2008 | REGULAR PAYMENT | 14,454.18 | 03/2008 | .00 / 5,736,036.00 | 14,454.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/11/2008 | REGULAR PAYMENT | 15,000.00 | 04/2008 | .00 / 5,736,036.00 | 15,000.00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/16/2008 | REGULAR PAYMENT | 33,309.66 | 04/2008 | .00 / 5,736,036.00 | 33,309.66 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/22/2008 | PAYMENT REVERSAL | -33,309.66 | 04/2008 | .00 / 5,736,036.00 | -33,309.66 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/12/2008 | REGULAR PAYMENT | 34,472.90 | 04/2008 | .00 / 5,736,036.00 | 34,472.90 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2009 | BILLING ADJUSTMENT | 35.05 | 03/2008 | .00 / 5,736,036.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

CRPRDNRB636b          6/13/2012 11:52:43 AM   PAGE    9/015    Fax Server

**Bank of America**
Home Loans

Account Number: ██████3030
Statement Period: 09/2008 – 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 5

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/24/2009 | BILLING ADJUSTMENT | 14.62 | 09/2008 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/13/2009 | BILLING ADJUSTMENT | 135.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/13/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/13/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/13/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/13/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |

Page 10

**Bank of America**
Home Loans

Account Number: 3030
Statement Period: 09/2008 - 08/2012
Date Prepared: 08/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/30/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 04/15/2009 | BILLING ADJUSTMENT | 33.25 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/11/2009 | BILLING ADJUSTMENT | 135.24 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/04/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/04/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/04/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/04/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/04/2009 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**
Best Loans

Account Number: ____3030
Statement Period: 03/2008 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 11

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 101.24 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/04/2009 | BILLING ADJUSTMNT | 135.24 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/10/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/10/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/10/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/15/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/10/2009 | BILLING ADJUSTMNT | 150.00 | 03/2008 | 5,735,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |

**Bank of America**
Home Loans

Account Number: .....5530
Statement Period: 09/2006 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 12

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/10/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/10/2009 | BILLING ADJUSTMENT | 135.24 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/18/2009 | BILLING ADJUSTMENT | 101.34 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/21/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/21/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/21/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/21/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/21/2009 | BILLING ADJUSTMENT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |

**Bank of America**
Home Loans

Account Number: ****3050
Statement Period: 09/2008 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 13

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/21/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | .00 | .00 | .00 | | | .00 | .00 |
| 09/21/2008 | BILLING ADJUSTANT | 135.24 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/15/2008 | BILLING ADJUSTANT | 135.24 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 11/10/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 11/10/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 11/10/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 11/10/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| 11/10/2008 | BILLING ADJUSTANT | 150.00 | 09/2008 | 5,736,036.00 | .00 | .00 | .00 | .00 | .00 | .00 |

Page 14

**Bank of America**
**Home Loans**

Account Number: ●●●●3380
Statement Period: 09/2006 – 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/10/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | .00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/12/2008 | BILLING ADJUSTMENT | 101.84 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/21/2008 | BILLING ADJUSTMENT | 135.24 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/19/2010 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/19/2010 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/19/2010 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/19/2010 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/19/2010 | BILLING ADJUSTMENT | 150.00 | 09/2006 | 5,736,036.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

CRPRDNRB635b          6/13/2012 11:52:43 AM  PAGE  15/015   Fax Server

Bank of America
Home Loans

Account Number: *****5330
Statement Period: 09/2006 - 06/2012
Date Prepared: 06/13/2012

Property Address:
610 S MASHTA DR
KEY BISCAYNE, FL 33149

Page 15

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/19/2010 | BILLING ADJUSTMENT | 150.00 | 03/2008 | .00 5,736,636.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/19/2010 | BILLING ADJUSTMENT | 101.84 | 03/2008 | .00 5,736,636.00 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

```
FEEINQ-01                 FEES DUE INQUIRY                          6/15/12
MRUMFIEL                Bank of America Home Loan                  09:03:37
                             DATE ORDER              FeeBal    813,913.27
Acct No: ████3030 - 2 JACK KACHKAR                            Clsdcd: 01
Starting Y/N: Owed By  Owed@   Open    Claim-   Debits  Credits  Warned: 05
                                                                 Lckout: 00
MMYY : _0/00  Mtgr _   Payoff _ Only _  able _  Only _  Only _
X = Detail, G=Group                   |Actg|Offs| Debit  |  Credit  | Balance |
Sel|TranDat|TranCd|Descriptions       |Type|Type|        |          |         |
  _  6/13/08 10204 CNSTRUCTN ADMIN FEE   C          100.00              304.25~
  _  7/07/08 10065 INSPECTION-OCCUPIED   C           15.75              288.50~
  _  7/18/08 10128 BPO - CRPI            C           95.00              193.50~
  _  7/29/08 10204 CNSTRUCTN ADMIN FEE   C          100.00               93.50~
  _  8/07/08 10065 INSPECTION-OCCUPIED   C           15.75               77.75~
  X  8/12/08 19004 TAX ADV (CUST SERV)   C      224439.56            224361.81
  _  9/10/08 10204 CNSTRUCTN ADMIN FEE   C          100.00            224461.81
  _  9/17/08 10065 INSPECTION-OCCUPIED   C           15.75            224477.56
  _  9/18/08 10204 CNSTRUCTN ADMIN FEE   C           96.00            224573.56
  _ 10/01/08 10204 CNSTRUCTN ADMIN FEE   C           24.00            224597.56
  _ 10/01/08 10204 CNSTRUCTN ADMIN FEE   C           76.00            224673.56
  _ 10/08/08 10065 INSPECTION-OCCUPIED   C           15.75            224689.31
                                                                     More...

Additional dates are available for display.
    Enter       F4=CdLkup      F7=Trancd     F13=Hstory     F1=Help
    F3=Exit      F6=Descend    F10=AcStts    F14=FCL        F24=More
```

```
FEEINQ-01                    FEES DUE INQUIRY                        6/15/12
MRUMFIEL                  Bank of America Home Loan                 09:03:37
                               DATE ORDER              FeeBal   013,913.27
Acct No: ████3030 - 2 JACK KACHKAR                             Clsdcd: 01
Starting Y/N: Owed By  Owed@    Open    Claim-  Debits  Credits  Warncd: 05
MMYY :  0/00  Mtgr _   Payoff _ Only _  able _  Only _  Only _   Lckout: 00
X = Detail, G=Group              |Actg|Offs| Debit  |         | Balance |
Sel|TranDat|TranCd|Descriptions  |Type|Type|        |  Credit |         |
 _ 10/08/09 10204 CNSTRUCTN ADMIN FEE  C       900.00            233649.71
 _ 10/20/09 10204 CNSTRUCTN ADMIN FEE  C       406.50            234056.21
 _ 11/06/09 10128 BPO FEE              C        95.00            234151.21
 _ 11/24/09 10064 ATTORNEY/TRUSTEE FEE C      1005.00            235156.21
 _ 11/24/09 10502 PROCESS SERVER       C       168.89            235325.10
 _ 11/24/09 10131 RECORDING FEES       C         9.00            235334.10
 _ 11/24/09 10287 FC SKIP TRACE FEE    C       159.75            235493.85
 _ 11/24/09 10064 ATTORNEY/TRUSTEE FEE C       135.00            235628.85
 X 12/22/09 13014 HELOC FLOOD INS      C      5903.91            241532.76
 _  1/06/10 10064 ATTORNEY/TRUSTEE FEE C       225.00            241757.76
 _  1/11/10 10204 CNSTRUCTN ADMIN FEE  C       406.50            242164.26
 X  1/12/10 19004 TAX ADV (CUST SERV)  C    209112.44            451276.70
                                                                  More...

Additional dates are available for display.
    Enter        F4=CdLkup      F7=Trancd    F13=Hstory   F1=Help
    F3=Exit      F6=Descend     F10=AcctSts  F14=FCL      F24=More
```

```
FEEINQ-01                    FEES DUE INQUIRY                        6/15/12
MRUMFIEL                 Bank of America Home Loan                   09:03:37
                             DATE ORDER                   FeeBal  013,913.27
Acct No: ████3030 - 2 JACK KACHKAR                            Clsded: 01
Starting Y/N: Owed By  Owed@    Open    Claim-   Debits  Credits   Warned: 05
MMYY :  0/00  Mtgr __  Payoff _ Only _  able _   Only._   Only __  Lokout: 00
X = Detail, G=Group             |Actg|Offs|  Debit  |  Credit  | Balance |
Sel|TranDat|TranCd|Descriptions |Type|Type|         |          |         |
 __ 6/03/10 10204 CNSTRUCTN ADMIN FEE  C         406.50            453257.88
 __ 6/22/10 55000 BPO DRIVEBY NB       C          95.00            453352.88
 __ 8/19/10 10204 CNSTRUCTN ADMIN FEE  C         406.50            453759.38
 __ 9/24/10 10128 BPO FEE              C          95.00            453854.38
 __ 9/25/10 55000 BPO DRIVEBY NB       C          95.00            453949.38
 __ 11/18/10 10128 BPO FEE             C          95.00            454044.38
 __ 11/23/10 10204 CNSTRUCTN ADMIN FEE C         406.50            454450.88
 X  11/23/10 19004 TAX ADV (CUST SERV) C       75422.10            529872.98
 __ 1/21/11 55000 BPO DRIVEBY NB       C          80.00            529952.98
 __ 2/20/11 10128 BPO FEE              Z                     95.00 529857.98
 __ 2/20/11 55039 BPO FEE NB           Z          95.00            529952.98
 __ 2/26/11 10128 BPO FEE              Z                     95.00 529857.98
                                                                   More...

Additional dates are available for display.
     Enter          F4=CdLkup      F7=Trancd     F13=History     F1=Help
     F3=Exit        F6=Descend     F10=ActSts    F14=FCL         F24=More
```

```
FEEINQ-01                    FEES DUE INQUIRY                      6/15/12
MRUMFIEL                  Bank of America Home Loan                09:03:37
                               DATE ORDER              FeeBal   813,913.27
Acct No: XXXXX3030 - 2 JACK KACHKAR                             Clsdcd: 01
Starting Y/N: Owed By  Owed@     Open   Claim-  Debits  Credits  Warncd: 05
MMYY :  0/00  Mtgr _   Payoff _  Only _ able _  Only _  Only _   Lokout: 00
X = Detail, G=Group              |Actg|Offs| Debit  |  Credit  | Balance |
Sel|TranDat|TranCd|Descriptions  |Type|Type|        |          |         |
__   2/26/11 55039 BPO FEE NB          Z         95.00            529952.98
__   3/10/11 10204 CNSTRUCTN ADMIN FEE C        175.00            530127.98
X    4/13/11 13014 HELOC FLOOD INS     C      96770.00            626897.98
__   4/27/11 55099 LEGAL FEES NB       C        135.00            627032.98
__   4/29/11 10204 CNSTRUCTN ADMIN FEE C        406.50            627439.48
__   5/24/11 55099 LEGAL FEES NB       C        105.00            627544.48
__   6/23/11 10064 ATTORNEY/TRUSTEE FEE Z               586.35    626958.13
__   6/23/11 56008 ATTY/TRUSTEE FEE INV Z       586.35            627544.48
__   6/23/11 10064 ATTORNEY/TRUSTEE FEE Z              1005.00    626539.48
__   6/23/11 56008 ATTY/TRUSTEE FEE INV Z      1005.00            627544.48
__   6/23/11 10064 ATTORNEY/TRUSTEE FEE Z                 1.33    627543.15
__   6/23/11 56008 ATTY/TRUSTEE FEE INV Z         1.33            627544.48
                                                                    More...

Additional dates are available for display.
    Enter          F4=CdLkup      F7=Trancd      F13=Hstory     F1=Help
    F3=Exit        F6=Descend     F10=ActSts     F14=FCL        F24=More
```

```
FEEINQ-01                    FEES DUE INQUIRY                      6/15/12
MRUMFIEL                 Bank of America Home Loan                09:03:37
                               DATE ORDER          FeeBal  813,913.27
Acct No: XXXX3030 - 2 JACK KACHKAR                         Clsdcd: 01
Starting Y/N: Owed By  Owed@    Open    Claim-  Debits  Credits  Warncd: 05
MMYY : 0/00   Mtgr _  Payoff _  Only _  able _  Only _   Only _  Lokout: 00
            X = Detail, G=Group       |Actg|Offs| Debit |  Credit | Balance |
Sel|TranDat|TranCd|Descriptions       |Type|Type|       |         |         |
 X  7/15/11 13014 FORCED PLACED POLICY C      6154.38           633698.86
 _  7/25/11 55099 LEGAL FEES NB        C       420.00           634118.86
    9/07/11 10204 CNSTRUCTN ADMIN FEE  C       150.00           634268.86
 X 10/06/11 13014 FORCED PLACED POLICY C      6171.56           640440.42
 X 11/22/11 19004 TAX ADV (CUST SERV)  C     76338.85           716779.27
 X 12/28/11 13014 FORCED PLACED POLICY C     96675.50           813454.77
    2/01/12 10064 ATTORNEY/TRUSTEE FEE C                259.50  813195.27
 _  2/23/12 10204 CNSTRUCTN ADMIN FEE  C       406.50           813601.77
 _  5/22/12 10204 CNSTRUCTN ADMIN FEE  C       406.50           814008.27
 _  5/24/12 55039 BPO FEE NB           Z                 95.00  813913.27

                                                          Bottom

All available entries have been displayed.
    Enter        F4=CdLkup      F7=Trancd     F13=History    F1=Help
  F3=Exit        F6=Descend    F10=AcctSts   F14=FCL        F24=More
```


**Countrywide**
HOME LOANS

Business Address:
450 American Street SV3-226
Simi Valley, CA 93065

Send Payments To:
PO Box 660694
Dallas, TX 75266-0694

08/02/08

JACK KACHKAR
20 Grand Bay Estates Cir
Miami          FL 33140

Account No.: ████3030
Property Address:
910 MASHTA DR
KEY BISCAYNE, FL 33140

<u>NOTICE OF DEFAULT</u>

Dear JACK KACHKAR :

Countrywide Home Loans Servicing LP (hereinafter "Countrywide") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made and/or construction has not been completed on the property by the maturity date. The total amount now required to reinstate the loan as of the date of this letter is as follows:

| | | |
|---|---|---|
| Interest Due: | 04/15/08 | $20,454.18 |
| Late Charges: | Date | $ |
| Other Charges: | Fees Due | $ |
| | Extension Fees | $29,815.94 |
| | Description | $ |
| | TOTAL DUE: | $60,270.12 |

Construction Maturity Date:     03/29/2008

If you failed to complete construction of the specified improvements on or before the Completion date of 03/29/2008 as required by the Construction Agreement, extension fees will be shown above under "Other Charges". These Extension Fees will increase at $14,407.07 on a monthly basis.

Additional fees may be incurred if Countrywide force placed insurance on the property in an effort to protect the Noteholder.

You have the right to cure the default. To cure the default, on or before 08/02/2008, Countrywide must receive the amount of $60,270.12 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before 08/02/2008 via wire or certified funds. This includes, but is not limited to the interest of $940.3337 per day from 05/01/2008 until the date the lender received the funds.

The default will <u>not</u> be considered cured unless Countrywide receives "good funds" in the amount of $60,270.12 on or before 08/02/08. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. Countrywide reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before 08/02/08, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is



EXHIBIT

D

foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, Countrywide and the Noteholder shall be entitled to collect all fees and costs incurred by Countrywide and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, Countrywide may enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure that default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.

If you are unable to cure the default on or before 08/02/2008, Countrywide wants you to be aware of various options that may be available to you through Countrywide to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Countrywide. Our basic plan requires that Countrywide receive, up front, at least ¼ of the amount necessary to bring the account current, and that the balance of the overdue amount by paid, along with the regular monthly payment, over a defined period of time. Other repayment plans are also available.
- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, if limited to certain loan types.
- Sale of Your Property: Or, if you are willing to sell your property in order to avoid foreclosure, it is possible that the sale of your home can be approved through Countrywide even if your home is worth less than what is owed on it.
- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Countrywide, you must contact us immediately. If you request assistance, Countrywide will need to evaluate whether the assistance will be extended to you. In the meantime, Countrywide will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by 08/02/2008 as outlined above will result in the acceleration of your debt.

Time is of the essence. Should you have any questions concerning this notice, please contact Countrywide Construction Lending immediately at 800-728-0400. Our office hours are between 8:15 AM and 6:15 PM (Pacific Standard Time).

Sincerely,

*Pat Brown*
Pat Brown
Vice President, Loss Mitigation
Countrywide Construction Lending
Phone -800- 728-0400 ext 6200